**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Indeck Power Equipment Company, | |
| Plaintiff/Counter-Defendant, | |
| v. | Case No. 21 C 1353 |
| Ashley Energy, LLC, | Hon. LaShonda A. Hunt |
| Defendant/Counter-Plaintiff. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff/Counter-Defendant Indeck Power Equipment Company leased boiler and water treatment equipment to Defendant/Counter-Plaintiff Ashley Energy, LLC for approximately three months. Contending that Ashley returned the boiler with significant damage, Indeck subsequently sued Ashley for breach of contract. In response, Ashley filed counterclaims against Indeck for common law fraud and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), based on alleged misrepresentations about the condition of the boiler and water treatment equipment. Before the Court is Indeck's motion to dismiss both counterclaims for failure to state a claim. For the reasons discussed below, the motion [104] is granted and Ashley's second amended counterclaims [100] are dismissed with prejudice.

**BACKGROUND**

All well-pleaded factual allegations are taken as true for purposes of ruling on this motion. Ashley, a Missouri limited liability company, owns a cogeneration power plant which produces steam and electricity for end-user customers in St. Louis, Missouri. Sometime in mid-2019, Ashley's steam generation equipment was damaged and rendered inoperable. To maintain operations, Ashley entered into temporary equipment leases. Between June 2019 and January 2020, Ashley leased 4 boilers from Wabash Power Equipment Company that were supplied with

St. Louis City water using water treatment equipment provided by Wabash. Between January 2020 and April 2020, Ashley leased an additional boiler and mobile water treatment trailer from Indeck, pursuant to the Lease Agreement at issue here. The Indeck equipment was also supplied with St. Louis City water.

The Indeck boiler and associated water treatment equipment were installed at the Ashley plant under the supervision of Indeck agents or employees. After Ashley returned the equipment, Indeck notified Ashley in April 2020 that it detected hard scale deposits on the internal surfaces of the boiler's steam drum, mud drums, and tube surfaces. Indeck alleges it incurred over $600,000 in damages for costs and expenses relating to boiler repairs, rental payments during the repair period, and interest.

Ashley alleges that representatives from Indeck falsely represented that the boiler was "like new" and "reliable and dependable," and that the water treatment equipment was new, to induce Ashley to enter into the lease. Ashley points to inspection reports from August 2020 and December 2020 that Indeck produced in discovery, which revealed the existence of substantial corrosion in the boiler tubes, stated that certain tubes were "never cleaned," and indicated that Indeck waited months between cleanings to remedy build-up. Ashley thus alleges that "on information and belief" the build-up referenced in April 2020 resulted from Indeck's failures to properly maintain the boiler, or alternatively, defects in the water treatment equipment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal based on the opposing party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim, courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the Court must

construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Applying these principals, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show entitlement to dismissal. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

Furthermore, while a complaint "may not be amended by the briefs in opposition to a motion to dismiss," *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), courts may nonetheless consider additional facts set forth in a brief opposing dismissal so long as those facts are consistent with the pleadings. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (citing *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n. 1 (7th Cir.2012)) *accord In re Dealer Mgmt. Sys. Antitrust Litig.,* 313 F. Supp. 3d 931, 938 (N.D. Ill. 2018) (citing *Jones v. Sparta Cmty. Hosp.*, 716 Fed. Appx. 547, 547 (7th Cir. 2018) ("because [plaintiff-appellant] now elaborates on the factual allegations in his amended complaint, and his elaborations are consistent with the pleadings, we consider that information in our review"); *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) ("Materials or elaborations in appellants' brief opposing dismissal may be considered, so long as those materials or elaborations are consistent with the pleadings."); *Martin v. Cook Cnty., Ill.*, No. 17 C 2330, 2018 WL 1942654, at *1 (N.D. Ill. Apr. 25, 2018) (a court may consider "additional facts set forth in [plaintiff's] brief opposing dismissal, so long as those additional facts are consistent with the pleadings.").

## DISCUSSION

### I.    Fraudulent Inducement (Count I)

Under Illinois law, there are five elements to a fraudulent inducement claim: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). A plaintiff's belief in and reliance on the allegedly false statement must have been reasonable. *Triumph Packaging Grp. v. Ward*, 877 F. Supp. 2d 629, 644 (N.D. Ill. 2012) (citing *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1207 (7th Cir. 1998); *Phil Dressler & Assocs., Inc. v. Old Oak Brook Inv. Corp.*, 192 Ill. App. 3d 577, 584 (2d Dist. 1989)). Consistent with Rule 9(b), fraud must be alleged with particularity. *JTG Equities, LLC v. Greenberg*, No. 18 C 7927, 2019 WL 2866713, at *3 (N.D. Ill. July 3, 2019).

As an initial matter, Indeck argues that Ashley's allegations of fraud are too conclusory to meet the heightened pleading standard under Rule 9(b). The Court is not persuaded. Ashley points to allegations about the falsity of the misrepresentations made, who made them, when they were made, what the statements were about, and how the statements were made. (*See* Resp. at 10 *citing* SAC ¶ 7). Read together, that information is particular enough to put Indeck on notice of Ashley's claim that the fraud arises from representations about the condition of the boiler and the water treatment equipment during lease negotiations that were made to induce Ashley to enter into the agreement.

Next, Indeck claims that the statements were "mere sales puffery," which is not actionable. Ashley counters that representations about equipment as "reliable and dependable" are objective and measurable, and it has alleged independent omissions sufficient to support the claim (i.e.,

failure to disclose a sub-standard cleaning policy and expected problems with new equipment). This is a closer question, but a review of relevant case law suggests that this analysis is fact intensive and depends on context, not just the language used. Under those circumstances and given the procedural posture, the allegations would likely be enough to survive dismissal. *See, e.g., Adrian Trucking v. Navistar, Inc.*, 609 F. Supp. 3d 728, 751 (N.D. Iowa 2022) (granting summary judgment in defendant's favor because "[s]tatements to the effect that a used vehicle is 'like new' or 'excellent' are subjective descriptions that are not specific and measurable but, instead, are classic statements of puffery[,]" especially in light of Plaintiff's knowledge that the vehicles were used and had between 185-232K miles).

However, the Court agrees with Indeck's argument that Ashley cannot allege the element of reliance, let alone reasonable reliance, in light of the presence of contract disclaimer language. The question of "whether reliance was reasonable is ordinarily a question of fact that courts may determine as a matter of law only when 'no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn.'" *Triumph*, 877 F. Supp. 2d at 647 (quoting *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (citing *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567 (1st Dist. 1998))). "In determining reasonableness, Illinois law directs courts to ask whether the plaintiff had a right to rely on the statement in light of the surrounding facts." *Triumph*, 877 F. Supp. 2d at 647 (citing *Cozzi Iron*, 250 F.3d at 574 ("we must consider all of the facts that [plaintiff] knew, as well as those facts [plaintiff] could have learned through the exercise of ordinary prudence")).

Considering the language of the parties' lease agreement (e.g., "Lessee thereby acknowledges that the Equipment is in a condition satisfactory to the Lessee on the

5

Commencement Date", "LESSOR MAKES NO . . . REPRESENTATION . . . AS TO THE . . . CONDITION OF . . . THE EQUIPMENT", "LESSEE ACCEPTS THE EQUIPMENT LEASED HEREIN ON AN AS IS, WHERE IS BASIS.", and "This Lease constitutes the sole and entire agreement of the parties to this Lease with respect to the subject matter contained herein and supersedes all prior and contemporaneous . . . representations . . . both written and oral, with respect to such subject matter."), no trier of fact could conclude that it was reasonable to rely on any pre-contract representations or omissions about the condition of the equipment. *See Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 991 (N.D. Ill. 2010) (dismissing common law fraud claim because reliance was not reasonable in light of contract disclaimers that directly contradicted allegedly fraudulent statements made pre-contract and stating, "The presence of an explicit contractual term that contradicts an extrinsic false statement, however, renders any subsequent reliance by the plaintiff unreasonable as a matter of law.") (citing *Regensburger,* 138 F.3d at 1208 ); *see also Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 719 (7th Cir. 2021) ("The phrase 'as is' usually signifies that 'the buyer takes the entire risk as to the quality of the goods involved and he must trust to his own inspection. Implied and express warranties are excluded in sales of goods 'as is.'") (quoting Black's Law Dictionary, Fifth Edition (1979)). Although the terms of the contract here are not necessarily contradictory of the pre-contract statements, together they warned Ashley that no pre-contact representations were binding, that the equipment was being provided as is, the burden was placed on Ashley to determine that the equipment was in satisfactory condition, and any risk in that regard fell on Ashley.

On a related note, Indeck also generally argues that the disclaimer language contained within the agreements defeats any claims based on supposed misrepresentations about the condition of equipment. But Ashley correctly notes that contract language cannot exculpate a party

from failing to provide equipment that satisfies its core function. *See* Resp. at 8 (citing *Horne*, 987 F.3d at 723; *Vigortone AG Products, Inc. PM AG Products, Inc.*, 316 F.3d 641 (7th Cir. 2002)). Indeck's attempt to distinguish between "exculpatory language" and "as-is" and "disclaimer" language misses the mark; the rule at issue is not limited to exculpatory language. *See Horne*, 987 F.3d at 718 ("under Illinois law, a party in material breach may not enforce a provision of a contract that is favorable to him, such as an exculpatory clause.") (citing cases). Still, courts generally seem to apply that rule when addressing contract claims, not fraud. While Ashley has raised affirmative defenses to Indeck's breach of contract action, it has never brought a counterclaim for breach of contract. In other words, a "core function" argument may have bearing on Ashley's affirmative defenses, but as explained above, the disclaimer language defeats any claim of reasonable reliance based on pre-contract statements (or omissions) regarding the condition of the leased equipment.[1]

In sum, the common law fraudulent inducement claim fails because Ashley cannot allege justifiable reliance in light of the contract language acknowledging Ashley's satisfaction with the condition of the equipment and acceptance of the equipment on an as is basis. Accordingly, Count I must be dismissed.

---

[1] In its response brief, Ashley clarifies that the fraudulent inducement claim is also based on omissions about Indeck's cleaning procedures and that the water treatment equipment would experience issues the first time out. From that, Ashley claims Indeck fraudulently induced Ashley "to operate the equipment" by failing to tell Ashley about problems with the equipment during start up. Ashley acknowledges, as it must, that those details are not included in the second amended counterclaim but argues they are closely linked to its general allegation that the leased equipment was defective. Alternatively, Ashley asks to amend once more to include these details. Indeck objects to any further amendments at this late in the case (expert discovery is now complete) and contends that this argument also fails because the contract gave Indeck the exclusive right to determine what the cleaning procedures should be. Furthermore, Indeck argues, any alleged omission occurred after the contract was entered into and therefore cannot support an inducement claim. The Court believes that the allegation of equipment defects in the current iteration of Ashley's counterclaim is likely broad enough to encompass the claim that Indeck failed to disclose its sub-standard cleaning procedures and expected problems with new water treatment equipment. Indeed, there is Illinois case law holding that where a contract vests one party with discretion, such discretion must be exercised in good faith. But that fact does not transform a breach of contract claim—which is essentially what Ashley attempts to assert here—into a viable fraudulent inducement claim.

## II.    <u>Violation of ICFA (Count II)</u>

To prevail on a claim for violation of the ICFA, "a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)). If pleading an ICFA claim based on deception, a plaintiff must meet the heightened pleading standard for fraud. *Benson*, 944 F.3d at 645. If pleading an ICFA claim based on unfair conduct, the heightened standard does not apply. *Id.* For an unfair conduct claim, a plaintiff need only allege that (1) the practice offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous, and (3) causes substantial injury to consumers. *Id.* at 647. Furthermore, to bring an ICFA claim, a plaintiff must either meet the statutory definition of "consumer" or satisfy the consumer nexus test. *Tile Unlimited, Inc. v. Blanke Corp.*, 788 F. Supp. 2d 734, 738 (N.D. Ill. 2011).

Ashley alleges that Indeck violated the ICFA by fraudulently providing defective equipment that did not perform its intended purpose and created a likelihood of confusion or misunderstanding. In addition, Ashley claims that the conduct took place in trade and commerce that implicates consumer protection concerns because it impacts the price consumers in St. Louis pay for steam.

Indeck contends that Ashley is not a consumer and has not alleged a jurisdictional nexus with Illinois consumers. Here, Ashley alleges that it sells steam to businesses in St. Louis, Missouri, not consumers in Illinois. Ashley responds that it sufficiently alleged an injury to consumers. Conceding that the ICFA does not apply to fraudulent transactions outside of Illinois, Ashley argues that the transaction took place "primarily and substantially" in Illinois because that

8

is where Indeck is located, that is where the misrepresentations were made, that is where Indeck failed to properly clean the equipment, and Illinois law governs the lease. Ashley also refers to deposition testimony  that the business impacts Illinois consumers. (Resp. at 15).

"To bring an ICFA claim, . . . a plaintiff must either: (1) be a "consumer," or, (2) if a non-consumer, satisfy the "consumer nexus" test, which requires the plaintiff to 'have suffered damages resulting from conduct that is either directed toward the market or otherwise implicates consumer protection concerns.'" *Tile Unlimited*, 788 F. Supp. 2d at 738 (quoting *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.,* 715 F. Supp. 2d 786, 792 (N.D. Ill. 2010)); *Athey Prods. Corp. v. Harris Bank Roselle,* 89 F.3d 430, 436-37 (7th Cir. 1996)); *First Comics, Inc. v. World Color Press, Inc.,* 884 F.2d 1033, 1039-40 (7th Cir.1989); *Stepan Co. v. Winter Panel Corp.,* 948 F. Supp. 802, 805-06 (N.D. Ill. 1996). Here, Ashley does not claim to meet the statutory definition of "consumer." And the Court finds that it fails to satisfy the consumer nexus test.

First, Indeck's complained of statements (and omissions) were directed to Ashley only, not the market in general, as required. *See Tile Unlimited,* 788 F. Supp. 2d at 740 ("Tile Unlimited thus has not alleged that Defendants' conduct was directed toward the market"); *Harris v. JAT Trucking of Ill., Inc.,* 2009 WL 2222740, at *9 (C.D. Ill. July 24, 2009) (consumer nexus test not satisfied where the "allegedly false statements were made to Plaintiff and other employees, not to the general public"); *Conditioned Ocular Enhancement, Inc. v. Bonaventura,* 458 F. Supp.2d 704, 711-12 (N.D. Ill. 2006).

Second, the connection Ashley alleges between Indeck's conduct and implication of consumer concerns—the effect on the price paid by St. Louis consumers—is too attenuated. *See Tile Unlimited, Inc.* 788 F. Supp. 2d at 740 ("The Defendant's argument that the misrepresentation affected consumers because consumers ultimately used the product . . . fails. Almost every product

sold by one commercial party to another will ultimately be sold to or otherwise effect [sic] a consumer. Consequently, if allegations [that the product ultimately will reach consumers] are sufficient to bring the claim within the ambit of the Act, the Act would apply to nearly all commercial transactions, a result contrary to the intent of the legislature as presently interpreted.") (quoting *Stepan,* 948 F. Supp. at 807); *see also Kingsford Fastener, Inc. v. Koki,* 2002 WL 992610, at \*3 (N.D. Ill. May 15, 2002) ("[Plaintiff] fails to articulate [a consumer] nexus, . . . except to state that defendant's conduct not only affected plaintiff, but plaintiff's customers and any other unfortunate purchasers of the defective fastening system from Hitachi's full-line distributors, not to mention the scores of home buyers who may have been affected by the cost and delay in remedying the problems with the faulty fastening system. This amounts to the oft-given and just as often rejected argument that because consumers are ultimately affected, the claim has a consumer nexus. A consumer nexus is not established, however, simply because consumers are the ultimate users of the products at issue.") (internal quotation marks omitted); *Williams Elec. Games, Inc. v. Barry,* 2001 WL 1104619, at \*10 (N.D. Ill. Sept. 18, 2001) (same).

Last, Indeck argues that the ICFA claim fails because there is no allegation that a reasonable consumer would be deceived. Ashley maintains that it sufficiently plead a "likelihood of deception" based on the same underlying fraud allegations. But the allegations to support any unfair conduct claims are conclusory and Ashley did not even attempt to satisfy the other elements (public policy, immorality, etc.). With respect to a deception claim, Ashley did not allege with enough detail how a consumer would be deceived. Likewise, Ashley did not sufficiently allege all of the elements of an unfair practice claim (i.e., offends public policy; is immoral, unethical, oppressive, or unscrupulous, and causes substantial injury to consumers.)

In sum, the ICFA claim fails because Ashley is not a consumer and cannot satisfy the consumer nexus test, as Indeck's allegedly fraudulent conduct neither was directed toward the market, nor did it implicate consumer concerns. Count II therefore must be dismissed.

## **CONCLUSION**

For all the foregoing reasons, Ashley's second amended counterclaims are dismissed with prejudice for failure to state a claim.

**DATED**: March 14, 2024                    **ENTERED**:


_LaShonda A. Hunt_
LaShonda A. Hunt
United States District Judge